UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

May 13, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Yolanda J. v. Martin O'Malley, Commissioner, Social Security Administration*
      Civil No. 23-1189-CDA

Dear Counsel:

On May 5, 2023, Plaintiff Yolanda J. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 9) and the parties' briefs (ECFs 12, 13 & 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on March 31, 2020, alleging a disability onset of January 1, 2018. Tr. 180-86, 223. Plaintiff's claims were denied initially and on reconsideration. Tr. 84-98. On July 14, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 40-58. Following the hearing, on August 1, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 7-27. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

II.   **THE ALJ'S DECISION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this

---

[1] 42 U.S.C. §§ 301 et seq.

process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff engaged in substantial gainful activity from April 2020 through December 2020. Tr. 12. However, the ALJ determined that there was a continuous 12-month period in which Plaintiff did not engage in substantial gainful activity. Tr. 12. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "asthma, unspecified inflammatory lumbar spondylopathy, and degenerative joint disease[.]" Tr. 13. The ALJ also determined that Plaintiff suffered from the non-severe impairments of major depression, migraine headaches, and panic disorder. Tr. 13. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 13. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, stoop, kneel, crouch, balance, and crawl. No concentrated exposure to pulmonary irritants such as dusts, odors, gases, fumes and poorly ventilated areas.

Tr. 16. The ALJ determined that Plaintiff was unable to perform past relevant work as a Certified Nursing Assistant (DOT[2] #355.674-014) but could perform other jobs that existed in significant numbers in the national economy. Tr. 21. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 22.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In

---

[2] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

Plaintiff's only argument on appeal is that the ALJ provided an insufficient analysis of Plaintiff's subjective physical complaints under 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p.[3] ECF 12, at 3. Specifically, Plaintiff avers that the ALJ's "bare bones" analysis of her subjective symptoms mischaracterizes Plaintiff's daily activities and is therefore legal error. ECF 12, at 7. Defendant counters that substantial evidence supports the ALJ's findings with respect to Plaintiff's subjective physical complaints. ECF 13, at 6.

When evaluating a claimant's subjective complaints, ALJs use the two-step analytical framework set forth in 20 C.F.R. § 404.1529 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). Step one of this process requires an ALJ to determine whether a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[4] *Id.* (quoting *Arakas*, 983 F.3d at 95). At the second step, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at the second step. *Id.* (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

When applying the second step of the test, the ALJ considers the daily activities that the claimant can perform. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Fourth Circuit has articulated several principles that govern an ALJ's assessment of daily activities. For example, because an "inability to sustain full-time work due to pain and other symptoms is often consistent with [an] ability to carry out daily activities," an ALJ must explain how a claimant's "particular activities" show a capacity to "persist through an eight-hour workday." *Arakas*, 983 F.3d at 100-01; *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("RFC [concerns the] ability to do sustained work-related physical and mental activities in a work setting [for] 8 hours a day, for 5

---

[3] 2017 WL 5180304, at *2 (Oct. 25, 2017).

[4] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

days a week, or an equivalent work schedule.").

Another principle governing the assessment of a claimant's daily activities is credibility. As part of the credibility evaluation, the ALJ may properly seize on any inconsistency between a claimant's complaints of pain and a claimant's reported routine activities. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (upholding finding that claimant was not disabled where claimant's daily activities included cooking, cleaning, shopping, socializing, and walking to town every morning). However, an ALJ "may not consider the type of activities a claimant can perform without also considering the *extent* to which [they] can perform them." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original). In this respect, the Court has recognized that an ALJ errs by rejecting a claimant's subjective complaints of debilitating pain solely because the claimant can perform the most basic of daily activities:

> When assessing the effect of claimants' activities of daily living on their physical RFC, ALJs must be careful not to place too much emphasis on simple tasks that are insufficiently indicative of a claimant's ability to do work existing in the national economy." *Eiker v. Astrue*, No. CIV.A. CBD-11-3584, 2013 WL 2149755, at *3 (D. Md. May 15, 2013). "[A] claimant need not be constantly bedridden or completely incapacitated to be found disabled." *Morgan v. Barnhart*, 142 F. App'x 716, 729 (4th Cir. 2005) (quoting *Trotten v. Califano*, 624 F.2d 10, 11–12 (4th Cir.1980)). Individual or sporadic instances of activity do not necessarily demonstrate a person's ability to work on a sustained basis for eight hours per day. *See Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."). Further, the ability to engage in some light activity does not necessarily translate into the ability to do substantial gainful activity. *See Morgan*, 142 F. App'x at 729 (finding improper the ALJ's adverse credibility judgment against a plaintiff who occasionally practiced needlepoint and crochet); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) ("The Secretary did not discharge his burden of proof that Higginbotham can do sedentary work by relying on the fact that she, at her own pace and in her own manner, can do her housework and shopping."); *McCoy v. Astrue*, No. 6:10-380-MBS, 2011 WL 2418681, at *12 (D.S.C. May 2, 2011) (finding improper an ALJ's adverse credibility judgment against a claimant who would load dishwasher and fold clothes, and went to Aruba on his honeymoon), *report and recommendation adopted*, No. 6:10-0380-MBS, 2011 WL 2413177 (D.S.C. June 13, 2011); *Rainey v. Astrue*, No. 7:09-CV-74-BO, 2010 WL 2402891, at *2 (E.D.N.C. June 11, 2010) (rejecting ALJ's reliance on plaintiff's ability to do housework "at her own pace with periods where no work was performed").

*Coreen T. v. Kijakazi*, No. CBD-19-3372, 2022 WL 252961, at *7 (D. Md. Jan. 26, 2022).

Here, at step three, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's]

statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 17. The ALJ described Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because:

> the claimant's admitted daily activities and abilities do not support a finding of disability. For instance, in her adult function report, the claimant stated that she prepares meals, she can do laundry, drive a car, and that she can go out alone. She also reported that she can pay attention very long, and that she can follow both written and spoken instructions very well (Exhibit 9E/7).

Tr. 17. The ALJ's assessment of Plaintiff's daily activities constitutes error for several reasons. First, most of the activities accurately described by the ALJ are basic in nature, with some requiring nothing more than a "modicum of physical exertion (i.e., driving, going out alone, doing laundry, and preparing meals)." *James L. v. Kijakazi*, No. BAH-23-1137, 2023 WL 5804621, at *4 (D. Md. Sept. 6, 2023). The Court has recognized that, absent additional explanation by an ALJ, these types of activities lack probative value in assessing a claimant's mental and physical abilities to sustain full-time work. *See, e.g.*, *Janice M. v. Kijakazi*, No. BAH-21-1715, 2022 WL 4120790, at *5 (D. Md. Sept. 9, 2022) (recognizing that paying bills does not require "more than a fleeting moment of attention" and that maintaining personal care, preparing light meals, driving, shopping in stores, utilizing a computer, and reading daily do not require "more than minimal physical exertion."). Accordingly, absent a more detailed explanation by the ALJ in this case, it is unclear how the performance of any of these activities contradicts Plaintiff's subjective complaints of pain. *See* Tr. 17 (noting, among other things, that Plaintiff complains of back and knee pain, issues with one hand and numbness, and that she testified that she could stand for only five to ten minutes, walk for a distance of two to three houses, uses a cane, and cannot do any physical activity).

Plaintiff argues that the ALJ's representation of her ability of "preparing meals," having "an uninhibited ability to do laundry," and that she "drives and can go out alone" are all mischaracterized material facts. ECF 12, at 5-6. The Court finds that the ALJ's assessment of these activities is, on this record, inadequate. In addition to the ALJ's failure to explain how these *types* of activities contradict Plaintiff's subjective complaints, the ALJ also failed to consider "the *extent* to which" Plaintiff can perform these activities. *Woods*, 888 F.3d at 694 (emphasis in original). In examining Plaintiff's function report, she does admit to preparing meals, but describes them as "mostly prepared meals, sandwiches or [her] son will cook [her food]" and that the meals are "frozen dinner[s] not long[,] sandwich 2 mins." and that she has "a chair to sit on if [she] cooks at [the] stove[.]" Tr. 275. In Plaintiff's second function report, almost a year after the first, Plaintiff stated she "no longer cooks on the stove" because the "pain is unbearable" so her "son prepares all food for [her]." Tr. 293. In Plaintiff's first function report she can do "light" laundry but cannot lift heavy loads, only goes outside two times a week, drives and rides in a car, and can go out of the house alone. Tr. 276. Plaintiff admits she shops for groceries and other household needs only once a month. Tr. 275-78. In Plaintiff's second function report, she no longer performs household chores and states she uses the motorized chair and spends "maybe ten minutes" in the store when shopping. Tr. 293.

These qualifying statements reflect Plaintiff's position that many of the activities she performs are curtailed due to her impairments. While the ALJ need not have accepted these statements at face value, the ALJ was nonetheless required to evaluate them. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (affirming reversal of ALJ's decision where the ALJ "disregarded" a claimant's "qualification of his activity levels" because an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion . . . .") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because it does not reflect evaluation of these qualifying statements, the ALJ's decision lacks "an accurate and logical bridge" from the evidence to the decision's conclusions. *Arakas*, 983 F.3d at 100 ) (quoting *Hines*, 453 F.3d at 565) (holding that substantial evidence did not support an ALJ's conclusion that a claimant's subjective complaints were inconsistent with her daily activities because the ALJ "selectively cited evidence concerning tasks which [the claimant] was capable of performing" and "improperly disregarded" her qualifying statements). Finally, an ALJ must explain how a claimant's "particular activities" show a capacity to "persist through an eight-hour workday." *Id.* at 100-01. Here, the ALJ's decision lacks such discussion.

Because the ALJ erroneously evaluated Plaintiff's activities of daily living, substantial evidence does not support the ALJ's decision. *Arakas*, 983 F.3d at 100. Therefore, Plaintiff's case will be remanded to the SSA. On remand, the ALJ must provide a more robust analysis of whether the type and extent of the activities which Plaintiff can perform suggests an ability to "engage in full-time work on a sustained basis." *Arakas*, 983 F.3d at 101. The ALJ should also consider further developing the record if the extent to which Plaintiff can perform a given activity is unclear. In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## V.     CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge